GALEN C. STUHR, APPELLEE, V. CATHERINE L. STUHR, NOW KNOWN AS CATHERINE L. MYERS, APPELLANT.

481 N.W.2d 212

Filed March 13, 1992.  No. S-91-159.

Terrance A. Poppe and Gregory C. Damman, of Hecht, Sweet, Morrow, Poppe & Otte, P.C., for appellant.

Hal W. Anderson, of Berry, Anderson, Creager & Wittstruck, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Catherine L. Myers, formerly Catherine L. Stuhr, the biological and noncustodial mother of Ashton Martin, appeals from the decision of the district court for Seward County, which denied Catherine Myers' application to change Ashton Martin's custody, previously granted to Galen C. Stuhr under a decree dissolving the Stuhr marriage. Galen Stuhr is neither the biological nor the adoptive father of Ashton Martin, who was born in 1985, but was the child's stepfather as a result of Catherine and Galen Stuhr's marriage in 1986.

In 1988, when the Stuhr marriage was dissolved, custody of Ashton Martin was disposed of by the district court's decree,

which incorporated Stuhrs' "Property Settlement and Custody Agreement," namely, the provision that Ashton Martin's custody was placed with Galen Stuhr, subject to reasonable visitation by Catherine Stuhr. The custody agreement also stated that Catherine and Galen Stuhr

> specifically agreed that the terms and provisions of this Property Settlement Agreement and Custody Agreement of the parties, specifically relating to the custody of Ashton L. Martin, shall be subject to modification by the Court, upon the petition of either party, upon the showing of a material change of circumstances indicating that such modification is in the best interest of said minor child [and that] in the event of the death of either party during the minority of such child, that the surviving party shall be entitled to custody.

Ashton Martin has lived with Galen Stuhr since 1986.

In May 1990, Catherine Myers filed an application to obtain custody of Ashton Martin and, for such modification of the custody provision in the dissolution decree, alleged that "there has occurred a material . . . change of circumstances," such as Catherine Myers' completion of treatment for alcohol and chemical dependency; hence, a change of custody was in the best interests of Ashton Martin.

At the November 27, 1990, hearing for change of child custody, the evidence centered on events after the dissolution decree in 1988.

At the time of the dissolution decree, Catherine Myers was receiving treatment for alcohol and chemical dependency, and she continued treatment until April 1989, when she eliminated her alcohol and chemical dependency and no longer required any form of treatment or counseling for substance abuse. To visit Ashton Martin, Catherine Myers drove from her home in Kansas to Galen Stuhr's home at Seward and frequently returned to Kansas with Ashton for periods ranging from a few days to a couple of weeks.

In December 1989, Catherine married Jeff Myers, a police officer in El Dorado, Kansas, and moved into a three-bedroom house with Jeff Myers and his son, Justin, a child by Jeff Myers' former marriage. At the time of the custody hearing,

Catherine Myers was pregnant and had an expected due date in May 1991. According to Jeff, Ashton and Justin consider each other brothers and have a good relationship. Jeff Myers approves of Catherine's decision to seek Ashton Martin's custody. Over the past several years, Catherine Myers has held various jobs from time to time, but at the time of the hearing was occupied with her activities in the Myers home and has indicated her intention to remain at home with Ashton, Justin Myers, and the new Myers baby.

Galen Stuhr is married to Teri J. Stuhr. Ashton Martin lives with Galen, Teri, and Teri's three children. Galen Stuhr expressed his love for Ashton, who is "like a son." Additionally, Catherine Myers acknowledged that Galen has been a good "father" and has done a good job raising Ashton.

As Galen and Teri Stuhr are both employed by Walker Manufacturing in Seward, a licensed day-care provider attends to Ashton while Galen and Teri are at work; otherwise, Galen and Teri Stuhr provide all child care for Ashton, who is a well-adjusted child, does well in school, and gets along well with Teri Stuhr's three children.

In its order on the custody question, the court stated:

The circumstances of both of the parties to this action have changed significantly since the entry of the decree herein on February 24, 1988. Each maintains and can provide an appropriate home environment for Ashton L. Martin and both have appropriate parenting perspectives. Each has improved his or her lifestyle.

However, significant changes in the circumstances of the parties do not result in an automatic change of custody of a minor child. The change must be in the best interest of the child - not the party.

[Galen Stuhr] has provided the only home to Ashton L. Martin that he has ever known and stability in the life of a minor child is very important and a factor that cannot be overlooked. Petitioner has been and remains a suitable parent.

Considering all the facts and circumstances of the relative positions of these parties and of the minor child this Court cannot conclude that it is in the best interest of

Ashton L. Martin to change custody.

## ASSIGNMENTS OF ERROR

Catherine Myers' assignments of error may be distilled as follows: (1) The district court abused its discretion by failing to properly consider Catherine Myers' superior right as Ashton Martin's biological mother, who is fit to have child custody, and (2) the district court abused its discretion in failing to grant Catherine Myers the custody of Ashton Martin.

## STANDARD OF REVIEW

In an appeal involving an action for dissolution of marriage, an appellate court's review of a trial court's judgment is de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See, *Huffman v. Huffman*, 236 Neb. 101, 459 N.W.2d 215 (1990); *Schulze v. Schulze*, 238 Neb. 81, 469 N.W.2d 139 (1991); *Ritter v. Ritter*, 234 Neb. 203, 450 N.W.2d 204 (1990).

## DISCUSSION

*Waiver of Parental Right.*

Galen Stuhr contends that Catherine Myers "waived" her parental rights when she executed the custody agreement incorporated into the dissolution decree and thereby lost not only her parental superior right to the custody of Ashton Martin, but also lost her right to even seek a change in child custody.

"[W]aiver is the voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct." *State v. Kennedy*, 224 Neb. 164, 170, 396 N.W.2d 722, 726 (1986). See, also, *Branch v. Wilkinson*, 198 Neb. 649, 256 N.W.2d 307 (1977); *Mousel v. Daringer*, 190 Neb. 77, 206 N.W.2d 579 (1973).

As we have stated repeatedly: "[P]arties in a proceeding to dissolve a marriage cannot control the disposition of minor

children by agreement." *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 582, 477 N.W.2d 8, 11 (1991). Accord, *Hicks v. Hicks*, 223 Neb. 189, 388 N.W.2d 510 (1986); *Eliker v. Eliker*, 206 Neb. 764, 295 N.W.2d 268 (1980); *Koser v. Koser*, 148 Neb. 277, 27 N.W.2d 162 (1947). "A determination of the best interests of a child or children includes a judicial decision based on evidence, not exclusively on a parental stipulation for disposition of a question concerning the parties' child or children." *Schulze v. Schulze*, 238 Neb. at 86-87, 469 N.W.2d at 143.

Judicial authority and responsibility to determine custody of minor children legally affected by a marital dissolution action is expressed in Neb. Rev. Stat. § 42-364 (Reissue 1988), namely:

> When dissolution of a marriage or legal separation is decreed, the court may include such orders in relation to any minor children and their maintenance as shall be justified, including placing the minor children in the custody of . . . third parties . . . . Custody and visitation of minor children shall be determined on the basis of their best interests.

The preceding statutory expression imposes on courts the responsibility to determine matters involving child custody, visitation, and support, a responsibility that cannot be forestalled by an agreement or stipulation of parties in a marital dissolution action. See *Hickenbottom v. Hickenbottom, supra.*

Moreover, Catherine Myers' execution of a custody agreement, standing alone, does not affirmatively demonstrate that she irrevocably waived or relinquished her maternal right in Ashton Martin, even if that were a legal possibility under the circumstances. The custody agreement expressly allows either party to obtain modification of the custody provision when the best interests of Ashton Martin dictate such alteration.

Although the record in this appeal reflects only the parties' stipulation for custody of Ashton Martin in conjunction with the Stuhrs' dissolution proceedings in 1988, and since no additional evidence was presented in the dissolution action concerning the child's best interests, for purposes of this appeal we accept the district court's conclusion in the dissolution decree, namely, the best interests of Ashton Martin in 1988

warranted that custody be granted to Galen Stuhr, and, on that basis, we proceed to dispose of the present appeal concerning the modification issue.

*Parental Superior Right.*

In the absence of a statutory provision otherwise, in a child custody controversy between a biological or adoptive parent and one who is neither a biological nor an adoptive parent of the child involved in the controversy, a fit biological or adoptive parent has a superior right to custody of the child. See *Nielsen v. Nielsen*, 207 Neb. 141, 149, 296 N.W.2d 483, 488 (1980):

> Where the custody of a minor child is involved . . . the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of a fit, proper, and suitable parent.

> The courts may not properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship, or has forfeited that right.

> The right of a parent to the custody of his minor child is not lightly to be set aside in favor of more distant relatives or unrelated parties, and the courts may not deprive a parent of such custody unless he is shown to be unfit or to have forfeited his superior right to such custody.

Accord *Peterson v. Peterson*, 224 Neb. 557, 399 N.W.2d 792 (1987). Cf. *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991) (pursuant to § 42-364(1), a former stepparent may have visitation rights to a child in a marital dissolution proceeding, when visitation is consistent with the child's best interests). The vast majority of state jurisdictions, 38 to be exact, have adopted the "parental preference" principle in child custody disputes, including these illustrative decisions: *Ex Parte Terry*, 494 So. 2d 628 (Ala. 1986) (biological parent's prima facie right to child custody may be overcome only by forfeiture of parental rights or unfitness); *In re B. G.*, 11 Cal. 3d 679, 523 P.2d 244, 114 Cal. Rptr. 444 (1974) (parental custody must be detrimental to a child before custody is granted to one who is not the biological parent of the child); *In re Guardianship of D.A.McW.*, 460 So. 2d 368 (Fla. 1984) (custody denied to biological parent only when detrimental to

child's welfare); *Sheppard v. Sheppard*, 230 Kan. 146, 630 P.2d 1121 (1981) (biological parent has fundamental right to custody of child in the absence of parental unfitness); *Chandler v. Chandler*, 535 S.W.2d 71 (Ky. App. 1975) (denial of a biological parent's custody of a child in favor of one who is not the child's biological parent requires a determination that the biological parent is not a suitable custodian); *Wallin v. Wallin*, 290 Minn. 261, 187 N.W.2d 627 (1971) (biological parent entitled to custody of child as a matter of law in the absence of neglect, abandonment, incapacity, or inability to care for child, or when custody by such parent is detrimental to child's best interest); *Keely v. Keely*, 495 So. 2d 452 (Miss. 1986) (best interests of a child are served by biological parent's custody of the child in the absence of abandonment, conduct of parent detrimental to child, or parental unfitness); *Henderson and Riphenburg v. Henderson*, 174 Mont. 1, 568 P.2d 177 (1977) (child custody granted to a biological parent unless that parent has neglected or abused the child); *Matter of Dickson v. Lascaris*, 53 N.Y.2d 204, 423 N.E.2d 361, 440 N.Y.S.2d 884 (1981) (child custody by a biological parent may not be displaced in the absence of grievous cause or necessity); *Worden v. Worden*, 434 N.W.2d 341 (N.D. 1989) (in the absence of exceptional circumstances, the biological parent is entitled to custody of a child notwithstanding that a third party can provide more amenities); *Langerman v. Langerman*, 321 N.W.2d 532 (S.D. 1982) (granting child custody to one other than a biological parent requires a showing of gross parental misconduct, unfitness, or extraordinary circumstances affecting child's welfare).

The parental preference principle, reflected in *Nielsen* and *Peterson*, is recognition that "the relationship between parent and child is constitutionally protected." See *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978). Accordingly, a court may not, in derogation of the superior right of a biological or adoptive parent, grant child custody to one who is not a biological or adoptive parent unless the biological or adoptive parent is unfit to have child custody or has legally lost the parental superior right in a child.

*District Court's Decision.*

Evidence presented at the modification hearing convinced

the district court, and convinces us, that both Catherine Myers and Galen Stuhr are fit and proper persons to have custody of Ashton Martin. Galen Stuhr has commendably cared for Ashton Martin, notwithstanding that Galen is neither a biological nor an adoptive parent of Ashton. The evidence demonstrates that Catherine Myers has exercised her visitation rights and nurtured a relationship beneficial to Ashton. However, the district court abused its discretion in failing to recognize and adequately consider Catherine Myers' superior right as a fit biological parent of Ashton Martin. Disregarding the superior right of Catherine Myers as the biological mother of Ashton Martin, the district court proceeded immediately and directly to the question whether there had been a material change of circumstances since the Stuhr dissolution decree. Applying the parental preference rule to the present case, however, we conclude that the district court abused its discretion by not recognizing and adequately considering Catherine Myers' superior right as a fit biological mother of Ashton Martin. Also, considering Ashton Martin's best interests under the circumstances, see *Von Tersch v. Von Tersch*, 235 Neb. 263, 455 N.W.2d 130 (1990), and *Ritter v. Ritter*, 234 Neb. 203, 450 N.W.2d 204 (1990), we conclude that custody of Ashton Martin should have been granted to Catherine Myers; therefore, we reverse the district court's judgment and grant custody of Ashton Martin to Catherine Myers, subject to Galen Stuhr's right to reasonably visit Ashton Martin. On issuance of this court's mandate in these proceedings, the district court shall enter its order, reflecting Ashton Martin's custody in Catherine Myers in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTION.

HASTINGS, C.J., concurring.

I agree with the result reached by the majority opinion. However, I object to our returning to, or reinforcing, the "chattel theory" of child custody rather than looking to the best interests of the child, " 'with due regard for the superior rights of a fit, proper, and suitable parent.' " See *Nielsen v. Nielsen*, 207 Neb. 141, 152, 296 N.W.2d 483, 489 (1980) (Hastings, J., concurring).

BOSLAUGH, J., joins in this concurrence.