PHILIP M. KELLY, APPELLEE AND CROSS-APPELLANT, V. LINDA F. KELLY, APPELLANT AND CROSS-APPELLEE.

510 N.W.2d 90

Filed December 21, 1993.   No. A-93-114.

Samuel W. Segrist, of Meister & Segrist, for appellant.

Richard A. Douglas, of Nichols, Douglas, Kelly, and Meade, P.C., for appellee.

SIEVERS, Chief Judge, and CONNOLLY and IRWIN, Judges.

CONNOLLY, Judge.

This appeal and cross-appeal arise from the decree dissolving the marriage of the appellant and cross-appellee, Linda F. Kelly, and the appellee and cross-appellant, Philip M. Kelly. Linda appeals the trial court's decision to award to Philip custody of the parties' three minor children, and specifically the decision of the trial court to allow expert testimony by a professional counselor who had seen the parties individually and as a couple. Philip cross-appeals the trial court's decisions concerning property division, the calculation of the parties' child support obligations, and the award of alimony to Linda. We affirm as modified.

## I. FACTS

Linda and Philip were married June 23, 1973. At the time of the marriage, Linda was in the middle of her 1-year training program to become a cytotechnologist, an assistant who aids a pathologist in the examination of body fluids for medical diagnosis. After the marriage, Linda worked full time as a cytotechnologist while Philip went to law school. When the parties moved to Scottsbluff, Nebraska, in 1977, Linda switched from full-time to part-time work as a cytotechnologist.

A petition for dissolution of the marriage was filed June 1, 1992, and trial was held September 30. At the time of the trial, the parties had three children: Brian, born April 13, 1977; Kevin, born February 25, 1979; and Adam, born December 4, 1981. Both Linda and Philip testified to their desire and fitness for custody of the children. The evidence shows that both parties are loving, caring parents who are actively involved in the raising of the children.

During in camera proceedings, Brian expressed a preference for living with his father, while Kevin and Adam said they would prefer to live with their mother. However, the boys' in camera testimony clearly reflected mixed emotions about their parents and the impending breakup of the family. The boys were unanimous in their belief that their mother would be leaving Scottsbluff. Brian expressed a strong desire to remain in Scottsbluff. Adam expressed regret at the prospect of having to leave Scottsbluff. Kevin did not express an inclination on that subject.

Philip called two witnesses besides himself to testify on his behalf. One was Jan Poole, a longtime acquaintance of the Kelly family. The other was Anne Talbot, a licensed registered nurse who described herself as a practicing psychotherapist nurse with a master's degree in mental health nursing. Talbot testified that she was certified as a guidance counselor in Nebraska and as an advanced practitioner of nursing by the American Nurses Association. Linda and Philip had participated in individual and joint counseling sessions with Talbot in an effort to deal with problems in their marriage.

Before Talbot testified, Linda's attorney objected on

grounds of physician-patient privilege to the disclosure by Talbot of any information regarding Linda. Although Talbot would not have qualified as a physician under Neb. Rev. Stat. 27-504 (Cum. Supp. 1992), the statute in force at the time of the trial, we note that Talbot would have been bound by Neb. Rev. Stat. § 71-1,274 (Reissue 1990), which prohibits a professional counselor from disclosing confidential information about a client that is derived from professional consultation.

The court ruled that Philip's attorney would be allowed to lay foundation for Talbot before the court would rule on whether Talbot would be permitted to give substantive testimony. After eliciting testimony from Talbot about her professional credentials and experience in counseling, Philip's attorney asked the court whether the questioning could move into substantive matters. Citing *Clark v. Clark*, 220 Neb. 771, 371 N.W.2d 749 (1985), for support, the court ruled that Talbot could testify only to matters relating to the joint sessions in which Linda and Philip met with Talbot as a couple. Shortly after Talbot began her substantive testimony, Linda's attorney raised a continuing objection on grounds of foundation, which was granted.

Despite the condition set down by the court, the record clearly shows that Talbot relied on both individual and joint sessions as she related background information on Linda and proffered expert opinions on Linda's fitness as a parent. Near the end of her direct examination, Talbot was asked for her opinion "to a reasonable medical certainty" as to which party would be a better single parent for the children. Talbot responded that Philip would be the better single parent.

The dissolution decree was entered October 14, 1992. The court found both parties fit for custody, but awarded custody to Philip because the court believed that Philip would be better able to maximize the potential of the children. Linda was not ordered to pay child support, but was instructed to notify the court when she obtained employment so that the matter of child support could be reevaluated. The court ordered Philip to pay alimony in the amount of $1,500 per month for 120 months.

Both parties filed motions for new trial on various grounds. The trial court denied both parties' motions for new trial. The

parties' assignments of error to this court are essentially restatements of their arguments for a new trial in the lower court, so we will address the pertinent allegations in the motions for new trial in the analysis section below.

## II. ASSIGNMENTS OF ERROR

### 1. LINDA'S APPEAL

Linda's assignments of error concern generally the matter of custody. Regarding the testimony of Talbot, Linda argues that the trial court erred in allowing Talbot to testify over Linda's objection based on her privilege to prevent the dissemination of confidential information by a professional counselor pursuant to § 71-1,274, in allowing Talbot to give improper opinion testimony, and in allowing Talbot to give opinions and recommendations based on information derived from individual and joint counseling sessions with Linda and Philip. Linda also assigns as error the trial court's refusal to order a new trial based on either of two grounds: newly discovered evidence or ineffective assistance of counsel.

### 2. PHILIP'S CROSS-APPEAL

Philip's assignments of error deal with property division and alimony. Philip argues that the trial court erred in calculating his net assets because the court refused to consider as a liability a promissory note payable to Philip's father and signed by Philip. Philip also argues that the court erred in refusing to set aside to him 75 percent of his corporate stock in his law firm, which stock Philip claims he purchased with the inheritance he received from his mother. Regarding alimony, Philip argues that the trial court erred in refusing to include the alimony awarded to Linda as income to Linda in the calculation of her child support obligation. Philip also argues that the court erred in awarding Linda alimony of $1,500 per month for 120 months.

## III. STANDARD OF REVIEW

In appeals involving actions for dissolution of marriage, the appellate court's review is de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of

discretion. When the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Stuhr v. Stuhr*, 240 Neb. 239, 481 N.W.2d 212 (1992).

Child custody determinations are matters initially entrusted to the discretion of the trial court and, on appeal, although the appellate court reviews these cases de novo on the record, the trial court's determination will normally be affirmed in the absence of an abuse of discretion, keeping in mind, however, that the trial judge observed and heard the witnesses and accepted one version of the facts rather than the other. *Hansen v. Hansen*, 240 Neb. 31, 480 N.W.2d 204 (1992).

The ultimate test in determining the appropriateness of an award involving custody of minor children is reasonableness, as determined by the facts of each case, and the trial court's determination normally will be affirmed in the absence of an abuse of discretion. *Kroenke v. Kroenke*, 239 Neb. 699, 477 N.W.2d 583 (1991).

■ On appellate review of a motion for new trial pursuant to Neb. Rev. Stat. § 25-1142(7) (Reissue 1989), the judgment of the trial court overruling the motion will not be disturbed absent an abuse of discretion. See *Bert Cattle Co. v. Warren*, 238 Neb. 638, 471 N.W.2d 764 (1991).

## IV. ANALYSIS

### 1. LINDA'S APPEAL

#### (a) Talbot's Testimony

In her assignments of error regarding Talbot's testimony, Linda raises several issues concerning the admissibility of the testimony of Talbot. We do not address them because resolution of those issues would not affect the result in this appeal.

■ On de novo review in this court, incompetent, irrelevant, and immaterial evidence offered in the original trial, which was admitted over proper objections by the adverse party, will be disregarded. *Stecker v. Stecker*, 197 Neb. 164, 247 N.W.2d 622 (1976). We decline to address the arguments pertaining to Talbot's testimony because even if we find that some or all of

Talbot's testimony was inadmissible and excise it from the record on de novo review, the record still contains evidence sufficient to support the decision to grant custody to Philip. The trial court found both parties fit to have custody, but decided that Philip could better maximize the potential of the children. Considering on de novo review all of the evidence except Talbot's testimony, and considering that the trial judge observed and heard the witnesses, we cannot say that the decision to grant custody to Philip was clearly untenable. Therefore, we find no abuse of discretion in the decision to grant custody to Philip.

### (b) Newly Discovered Evidence

■ In order to make a sufficient showing for new trial upon the ground of newly discovered evidence, the proof in support thereof must show that such evidence was then available which neither the litigant nor his or her counsel could have discovered by the exercise of reasonable diligence, that it was not merely cumulative, but competent, relevant, and material, and of such character as to reasonably justify a belief that its admission would probably bring about a different result if a new trial were granted. See *Kocarnik v. Kocarnik*, 209 Neb. 454, 308 N.W.2d 352 (1981).

Soon after entry of the dissolution decree on October 14, 1992, the parties figuratively commenced lobbing grenades at each other in the form of affidavits.

In support of her motion for new trial based on newly discovered evidence pursuant to § 25-1142(7), Linda filed a series of affidavits executed by persons acquainted with the Kelly family. Linda's posttrial attorney (not her trial counsel) also executed an affidavit. The gist of the affidavits executed by the acquaintances of the Kelly family was that Philip had physically abused the boys on past occasions and had carried on an extramarital affair with a former female client. A collection of so-called love letters between Philip and his alleged paramour were delivered into Linda's possession. The record is unclear as to how these letters were discovered. Linda argued that the information in the affidavits constituted newly discovered evidence because she had been unaware of the

incidents of abuse and of the affair until the affiants who had knowledge of the alleged events contacted her after entry of the decree.

Philip countered with affidavits executed by himself, other family members, and the woman with whom he allegedly had the affair. The affidavits filed by Philip refuted the allegations of abuse and infidelity contained in the affidavits filed by Linda.

In considering the motion for new trial, the trial court was presented with a conflict in the evidence, the resolution of which depended entirely on the trial court's evaluation of the credibility of the affiants and their allegations. The court had observed several of the affiants as trial witnesses. Therefore, the court was in a much better position than we are on appellate review to evaluate the credibility of the affiants and their allegations.

We cannot disturb the trial court's judgment overruling the motion for new trial unless we find that judgment clearly untenable. See *Bert Cattle Co. v. Warren*, 238 Neb. 638, 471 N.W.2d 764 (1991). The trial court had to sort through a flurry of emotionally charged accusations and denials that were supported by nothing other than the statements of the affiants. On the record before us, it is impossible for us to find clearly untenable the trial court's determination that the allegations in the posttrial affidavits did not constitute newly discovered evidence sufficient to justify a new trial. Therefore, we affirm the order overruling the motion for new trial.

### (c) Ineffective Assistance of Counsel

■ The claim of ineffective assistance of counsel is not included among the causes set out in § 25-1142 as grounds for granting a new trial in a civil action. Our research yields no Nebraska cases in which ineffective assistance of counsel was considered proper grounds for granting a new trial in a civil action. We conclude that in Nebraska, the claim of ineffective assistance of counsel is one reserved for a defendant in a criminal action. We do not ignore Linda's argument in her brief that in a case of this nature, a lawsuit for malpractice—the usual remedy for one dissatisfied with counsel's performance in

a civil action—will not accomplish her goal of recovering custody of the children. However, without Nebraska statutory or case law authority to do so, we decline to recognize the claim of ineffective assistance of counsel as proper grounds for granting a new trial in a civil action.

Although we do not address this assignment of error on the merits, we note that the trial court made a specific finding that there was no lack of skill on the part of Linda's counsel which would require a new trial.

## 2. Philip's Cross-Appeal

### (a) Promissory Note Payable to Philip's Father

The record includes a promissory note for $5,000 signed by Philip and payable to Philip's father. Philip claims that the note covers a $5,000 loan from his father that was used to reduce the first mortgage on the parties' house. Philip insisted at trial that the note was an obligation similar to any other type of debt. However, Philip acknowledged at trial that in the nearly 6 years since the execution of the note in November 1986, he had not made any interest or principal payments on the note. According to the terms of the note, any outstanding balance and accumulated interest on the note at the time of the father's death would be subtracted from Philip's share of his father's estate. Having reviewed the note and the evidence pertaining to it, we find no error by the trial court in deciding not to consider the note as one of Philip's debts for purposes of dividing the marital estate.

### (b) Stock Allegedly Purchased With Inheritance

Philip argues that 75 percent of his corporate stock in the law firm should have been set aside to him as an inheritance because he used his inheritance from his mother to purchase the stock. Philip's testimony is the only evidence in the record to support this assignment of error. There is no documentation of the alleged use of the inheritance to purchase the stock. Absent any proof in addition to Philip's testimony, we find no error in the trial court's determination that the funds from the inheritance were commingled in the marital estate. Therefore, we find no error in the court's refusal to set aside to Philip 75 percent of the stock.

### (c) Relation of Alimony to Child Support

Philip asserts that alimony must be included in the income of the receiving party for purposes of calculating both parties' child support obligations, but paragraph M of the Nebraska Child Support Guidelines states: "**Alimony.** These guidelines intend that spousal support be determined from income available to the parties after child support has been established." Philip argues that paragraph M applies only to cases in which a noncustodial parent pays child support and alimony to a custodial parent. We reject this interpretation.

We find nothing in paragraph M or in the child support guidelines as a whole to support Philip's assertion that the relationship between child support and alimony changes depending upon which party, if either, is ordered to pay alimony. The clear language of paragraph M states that child support obligations are to be calculated prior to the calculation of alimony. Obviously, in filling out the child support worksheet, a party cannot factor alimony into income if alimony has not yet been determined. There is no deduction allowed in the child support worksheet for the party paying alimony, which one would expect if the other party is required to acknowledge alimony as income.

We conclude that pursuant to paragraph M of the child support guidelines, alimony is to be calculated subsequently to the calculation of child support obligations. Therefore, we hold that alimony paid to the noncustodial parent by the custodial parent is not income for purposes of calculating the child support obligation of the noncustodial parent. Consequently, we find no error in the trial court's decision to exclude alimony from Linda's income in the calculation of her child support obligation.

### (d) Alimony Award

Philip argues that the alimony awarded to Linda was excessive and too long in duration. We agree.

"The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances . . . make it appropriate." Neb. Rev. Stat. § 42-365 (Reissue 1988). Among the factors to be considered in an award of alimony is "the ability of the

supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party." *Id.* Alimony is not to be used simply to equalize the income of the parties, but to assist the economically disadvantaged party during a period of unavailability for employment or training for employment. See *Preston v. Preston,* 241 Neb. 181, 486 N.W.2d 902 (1992). Nebraska statutes and case law clearly indicate that alimony is a means of helping the economically disadvantaged party get through the period of transition after the divorce, until that party becomes self-sufficient, remarries, or dies.

The record indicates that at the time of trial, the parties and the trial court were aware that Linda was a trained cytotechnologist considering a job offer in Denver at an annual salary in the $38,000- to $40,000-range. Linda testified that she was "very, very skilled" in her field. There seemed to be little doubt that Linda would be able to secure employment as a cytotechnologist relatively soon after the divorce. There would be no training interval for her. Linda was ready to go to work immediately, and her commencement of work would not interfere with the interests of the children, since they would be in Philip's custody. When we consider that the purpose of alimony is to provide financial support until a party is able to develop his or her earning capacity, we can find no justification in the record for awarding Linda alimony of $180,000, payable at $1,500 per month for 10 years. An award ordering alimony payments for a reasonable period of time, long enough to allow Linda to rejoin the work force and reorganize her life, would have been justifiable, but not the unconditional 10-year award ordered by the trial court.

## V. CONCLUSION

We conclude from the record that Linda will have reached the point of self-sufficiency contemplated by the statutes and case law on alimony long before the termination of Philip's alimony payments in October 2002. On the facts of this case, we believe a reasonable period of alimony to be 60 months. Therefore, we modify the award of alimony to Linda by ordering Philip to pay alimony of $1,500 per month for 24

months, then $1,000 per month for 36 months.

Linda's motion asking that Philip be ordered to pay attorney fees is denied. Both parties are to pay their own costs.

AFFIRMED AS MODIFIED.