756 N.W.2d 522 (2008)
276 Neb. 653
Kelli M. FARNSWORTH, appellee,
v.
Thomas D. FARNSWORTH, appellant, and
Tim McQueen and Karla McQueen, intervenors-appellees.
No. S-07-1094.
Supreme Court of Nebraska.
October 17, 2008.
*524 J. Leef, of Sonntag, Goodwin & Leef, P.C., for appellant.
Lori A. Zeilinger and George M. Zeilinger, Grant, for intervenors-appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

INTRODUCTION
Thomas D. Farnsworth appeals the decision of the Perkins County District Court allowing the parents of his deceased ex-wife, Tim McQueen and Karla McQueen, to retain custody of his two sons. After determining that the original custody agreement granted custody to the McQueens, the district court concluded that while Farnsworth had shown a material change of circumstances, the best interests of the minor children required custody to remain with the McQueens. We reverse the decision of the district court.

BACKGROUND
Farnsworth married Kelli M. McQueen (Kelli) on June 19, 1993, and they had two sons. During the course of the marriage, the Farnsworths twice resided with the McQueens for an extended period of time. Karla provided daycare for the boys while the Farnsworths lived with the McQueens. When Farnsworth and Kelli separated, Kelli and the boys moved in with the McQueens.
Farnsworth and Kelli divorced in 2006, and their custody agreement granted custody of their children to the McQueens. As stated in the district court's order, "`[t]he permanent care, custody and control of the minor children shall be awarded to [Kelli's] parents ... subject to [Farnsworth's] rights of reasonable visitation.'" The custody agreement also stated that Farnsworth and Kelli would execute a power of attorney every 6 months, reaffirming that the McQueens had custody of the two boys.
At the divorce hearing, Farnsworth stated that he had agreed to give custody to the McQueens because "[m]y job, the way it is set up right now, I'm out the door early in the morning, I'm home late at night, and it would be better for the kids" to be with their grandparents, the McQueens. No other evidence as to the best interests of the children was presented. The district court stated that while the custody agreement was unusual, it found the arrangement to be in the best interests of the children and granted custody to the McQueens.
After the divorce was finalized, Kelli moved to St. Louis, Misssouri, but moved back to Nebraska shortly thereafter, Kelli died January 12, 2007. After her death, Farnsworth moved to reopen the divorce decree to regain custody of the children. At the hearing on this action, Farnsworth testified that from his discussions with Kelli, it had been his understanding that the McQueens would be given temporary custody of the boys until Kelli was prepared to take custody again. However, Karla testified that it was her understanding that the McQueens would be given custody of the children but that she had never discussed it with Farnsworth.
Evidence presented at the hearing showed that both boys, then ages 13 and 11, had special needs. The testimony of Karla and the guardian ad litem indicated that the boys required a great deal of *525 structure in order to do well in school. The guardian ad litem recommended that the boys remain with the McQueens, because the McQueens imposed the necessary structure, but she further recommended that Farnsworth's visitation be increased. During a meeting in chambers, the district court asked both boys if they had a preference, and both stated that they would like to live with Farnsworth.
The district court found the facts demonstrated that Farnsworth loved his children and had consistently exercised his visitation rights since the divorce. The district court also found, however, that in several respects, Farnsworth's testimony at the hearing "materially differed" from his deposition taken in anticipation of trial. The discrepancies included Farnsworth's changing his testimony about plans to marry his girlfriend, statements about why he had been dismissed from a job, and claims about being denied access to his sons' schools and records.
Also of concern to the district court was the fact that Farnsworth had "admitted that he had held 21 different jobs since his marriage to [Kelli] in 1993" and that "[t]he house which [Farnsworth] occupies in Big Springs[, Nebraska,] is not owned by him, but is owned by [his girlfriend]." The district court stated that although both boys expressed a desire to live with their father, they were of insufficient age and maturity to render an informed opinion. The district court, however, made no finding that Farnsworth was an unfit parent.
The district court determined the custody agreement signed by the Farnsworths upon their divorce was part of the divorce decree and applied the standards for modification of a custody agreement. After determining that the death of Kelli constituted a material change of circumstances, the district court addressed whether granting custody to Farnsworth would be in the children's best interests. The district court found that Farnsworth's employment and housing situation was in "a state of flux" and that it was in the best interests of the children to remain with the McQueens. Farnsworth appeals that decision. We reverse.

ASSIGNMENT OF ERROR
Farnsworth assigns, restated and renumbered, that the district court erred when it applied the standards for modification of a custody agreement and failed to properly consider Farnsworth's parental preference.

STANDARD OF REVIEW
[1, 2] Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.[1] A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result.[2]

ANALYSIS
[3-5] The primary issue presented in this appeal is whether the parental preference principle was applicable to Farnsworth's situation. Under the parental preference principle, a parent's natural right to the custody of his or her children trumps the interest of strangers to the parent-child relationship and the preferences *526 of the child.[3] Although the question present in every child custody case is the best interests of the child, a court cannot overlook or disregard that the best interests standard is subject to the overriding recognition that the relationship between parent and child is constitutionally protected.[4] The U.S. Supreme Court has held that due process of law requires a parent to be granted a hearing on his or her fitness as a parent before being deprived of custody.[5] And the right of a parent to the care, custody, and management of his or her children is considered one of the most basic rights of man.[6] Farnsworth argues that the district court erred in not considering his superior right. We agree.
[6-8] Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being.[7] Absent circumstances which terminate a parent's constitutionally protected right to care for his or her child, due regard for that right requires that a biological or adoptive parent be presumptively regarded as the proper guardian for his or her child.[8] The courts may not properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship or has forfeited that right.[9]
Farnsworth's situation is somewhat unique in that he and Kelli agreed to the placement of the children with the McQueens through the custody agreement at the time of their divorce. Although Farnsworth argues that the custody agreement was invalid because it was based on a stipulation by the parties and not on a finding of the children's best interests, we need not address this issue here. As discussed below, the law clearly requires that a parent's right to the care and custody of his or her children be given due consideration, which the district court failed to do.
Several cases indicate that the district court erred in not considering Farnsworth's superior rights. In Stuhr v. Stuhr,[10] the district court in its divorce decree granted custody of the minor child to Galen Stuhr. Galen was neither the biological nor the adoptive father of the child. Four years later, the mother, Catherine Myers, petitioned for a change in the custody agreement, alleging there had been a material change in circumstances. Although Catherine had been undergoing treatment for alcohol and chemical dependency at the time of the divorce, she had since completed treatment and had remarried. The district court found that there had been a material change in circumstances, but that it was in the best interests of the child to remain with Galen. Catherine appealed.
*527 Galen contended that Catherine had waived her parental rights by agreeing to the custody arrangement incorporated into the dissolution decree and therefore had lost her superior parental right to custody. After addressing the fact that parties to a dissolution decree cannot control the disposition of minor children by agreement, the court stated that
[i]n the absence of a statutory provision otherwise, in a child custody controversy between a biological or adoptive parent and one who is neither a biological nor an adoptive parent of the child involved in the controversy, a fit biological or adoptive parent has a superior right to custody of the child.[11]
Evidence presented at the hearing indicated that Catherine was a fit parent and that she had nurtured a beneficial relationship with her son. This court then held that the district court had abused its discretion by not considering Catherine's superior right to custody.
Three additional cases addressing the right of a parent to terminate a formal guardianship agreement utilized much the same reasoning.[12] This court pointed out that terminating a guardianship involves two principles that sometimes come into conflict in child custody issues.[13] On the one hand, a court must consider the best interests of the child, but on the other hand, there is the constitutionally protected right of a parent to the care and custody of his or her child.[14] In each case, a mother had left her child in the care of relatives and had instituted a formal guardianship. And, in each case, the mother later sought to terminate the guardianship and regain custody.
[9] This court applied the parental preference principle in those cases.[15] A parent's superior right to the custody of his or her child "is acknowledgment that parents and their children have a recognized unique and legal interest in, and a constitutionally protected right to, companionship and care."[16] As a result, the parent-child relationship will be protected, absent parental unfitness.[17] "Moreover, the fact that ... one outside the immediate family relationship ... may be able to provide greater or better financial care or assistance for a child than can a parent is an insufficient basis to deprive a parent of the right to child custody."[18]
[10, 11] Allowing a third party to take custody, even for a significant period of time, is not the equivalent to forfeiting parental preference.[19] Although length of guardianship may be considered by a court when determining whether a parent has waived his or her superior rights, it is not dispositive. Clear and convincing evidence of substantial, continuous, and repeated neglect of a child must be shown in order to overcome the parent's superior right.[20] *528 No such showing was made here. Indeed, in the district court's order, it did not even mention the superior right of a biological parent to the care and custody of his or her child as against a third party.
[12] The record clearly establishes, and the district court made a specific finding of fact, that Farnsworth cares for his sons and has consistently exercised his visitation rights. While there are facts that indicate that the boys might have more stability if they remain with the McQueens, such a finding alone is not enough to overcome the superior rights of a biological parent. Courts apply the parental preference principle "because the best interests standard, taken to its logical conclusion, would place the minor children of all but the `worthiest' members of society in jeopardy of a custody challenge."[21] Given our standard of review and applying the parental preference rule in this case, and noting there is no evidence in the record that would indicate Farnsworth is an unfit parent, we reverse the decision of the district court and grant custody of the two minor children to Farnsworth.

CONCLUSION
The district court abused its discretion by granting custody to the McQueens. Rather than focusing solely on the best interests of the children, the district court should have also considered the superior interests of Farnsworth, the biological parent. We therefore reverse the decision of the district court and award custody of the two minor children to Farnsworth.
Reversed.
NOTES
[1] McLaughlin v. McLaughlin, 264 Neb. 232, 647 N.W.2d 577 (2002).
[2] Robb v. Robb, 268 Neb. 694, 687 N.W.2d 195 (2004).
[3] In re Guardianship of D.J., 268 Neb. 239, 682 N.W.2d 238 (2004). See, also, Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); Uhing v. Uhing, 241 Neb. 368, 488 N.W.2d 366 (1992); Stuhr v. Stuhr, 240 Neb. 239, 481 N.W.2d 212 (1992); Nielsen v. Nielsen, 207 Neb. 141, 296 N.W.2d 483 (1980).
[4] Uhing, supra note 3.
[5] Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).
[6] Id.
[7] See Ritter v. Ritter, 234 Neb. 203, 450 N.W.2d 204 (1990).
[8] In re Guardianship of Robert D., 269 Neb. 820, 696 N.W.2d 461 (2005).
[9] Nielsen, supra note 3.
[10] Stuhr, supra note 3.
[11] Id. at 245, 481 N.W.2d at 216.
[12] In re Guardianship of Robert D., supra note 8; In re Guardianship of D.J., supra note 3; Uhing, supra note 3.
[13] In re Guardianship of D.J., supra note 3.
[14] Id.
[15] See, In re Guardianship of Robert D., supra note 8; In re Guardianship of D.J., supra note 3; Uhing, supra note 3.
[16] Uhing, supra note 3, 241 Neb. at 374, 488 N.W.2d at 371.
[17] Id.
[18] Id. at 377, 488 N.W.2d at 373.
[19] See In re Guardianship of Robert D., supra note 8.
[20] See id.
[21] In re Guardianship of D.J., 268 Neb. at 247, 682 N.W.2d at 245.