IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE ON BEHALF OF OLIVER M. V. KIRK B.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA ON BEHALF OF OLIVER M., APPELLEE,
V.
KIRK B., DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT, MEGHAN M., THIRD-PARTY
DEFENDANT, APPELLEE, AND RYAN M. AND LESLIE M., INTERVENORS-APPELLEES.

Filed January 14, 2014.    No. A-13-205.

Appeal from the District Court for Lancaster County: KAREN B. FLOWERS, Judge. Affirmed.

Kirk B., pro se.

Joshua D. Barber, of Barber & Barber, P.C., L.L.O., for intervenors-appellees.

IRWIN, MOORE, and BISHOP, Judges.

MOORE, Judge.

## INTRODUCTION

Kirk B. appeals from the order of the district court for Lancaster County, which denied his request for custody of his son, Oliver B., in this paternity proceeding. Megan M.'s brother, Ryan M., and his wife, Leslie M., who were previously appointed guardians of the child, intervened. Because we find no abuse of discretion in the court's decision to deny Kirk's request for custody and to award custody to Ryan and Leslie, we affirm.

## BACKGROUND

Oliver was born to Meghan in November 2008. Meghan and Kirk were never married and lived together for only a couple of months after Oliver's birth. On February 8, 2010, the State filed a complaint to establish paternity and support. Subsequent proceedings established that Kirk was Oliver's father, and he was ordered to pay child support in the amount of $50 per month.

Throughout this case, Meghan has struggled with her mental health and substance abuse. Oliver lived with Meghan, but at times, Ryan and Leslie would care for Oliver when Meghan was unable to do so. In February 2011, Meghan was experiencing a particularly difficult time, and she voluntarily placed Oliver with Ryan and Leslie for an extended period. Oliver has remained in their care continuously since March 2011. In a separate county court proceeding, Ryan and Leslie were appointed temporary guardians for Oliver on March 9, 2011, and they were appointed his permanent guardians on May 23, 2012. The county court found that appointment of permanent guardians was necessary because Kirk and Meghan were both unfit to have custody at that time. In case No. A-12-689, Kirk apparently attempted to appeal from this order; however, the appeal was dismissed on October 22, 2012, for Kirk's failure to file a brief. Kirk's petition for further review was denied by the Nebraska Supreme Court.

On February 11, 2011, Kirk filed a motion in the district court paternity action, seeking temporary custody of Oliver. On February 25, Ryan and Leslie sought leave to intervene in the paternity case. On March 11, the court denied Kirk's motion for temporary custody because he had failed to add Meghan as a party and had not been given permission to file a third-party complaint. The court also denied Ryan and Leslie's request to intervene at that point, stating that neither the fact that they had cared for Oliver for short periods in the past and were willing to do so again nor Meghan's desire to have them care for Oliver while she "completes treatment" was a sufficient reason to allow them to intervene. Subsequently, Meghan was added as a third-party defendant, Kirk filed a third-party complaint seeking permanent custody, and Ryan and Leslie were given permission to intervene. Because of delays caused by interlocutory appeals in both the guardianship and paternity cases and the incarceration of one or the other of Oliver's parents, a hearing on the merits of Kirk's request for permanent custody was not held until February 2013. The intricacies of the procedural history are not relevant to our resolution of this appeal, and we do not discuss them further here, other than to note that both Kirk and Meghan were awarded temporary parenting time at various points.

On February 25, 2013, trial was held on Kirk's custody motion. Neither Meghan nor the State appeared. The court received various exhibits and heard testimony on the fitness of both Meghan and Kirk and whether it was in Oliver's best interests to be in Ryan and Leslie's custody.

The record shows that Oliver had been living with Ryan and Leslie with Meghan's consent for over 2 years at the time of the hearing. Ryan works at a law firm as a clerk and serves in the Army National Guard one weekend a month. Leslie is an elementary school teacher. Ryan and Leslie own a four-bedroom home, and Oliver has his own bedroom. Oliver attends daycare and will start preschool in the fall of 2013. Since Oliver has been living with Ryan and Leslie, they have tended to his physical and medical needs. Ryan testified that no one else contributes directly to Oliver's support. Ryan testified that Meghan is not fit to have custody of Oliver. Meghan continues to struggle with addiction and mental illness, has no place to live, and has no income, and there is a warrant for her arrest. Ryan testified that Kirk is not fit to have custody of Oliver because of his criminal history, violence against Meghan, and lack of means to provide for Oliver. Ryan believed it is in Oliver's best interests to remain in his and Leslie's custody because of their ability to provide him with a stable home environment and because they care about Oliver and want what is best for him. Leslie agreed with Ryan's opinions with respect to

Meghan's and Kirk's unfitness to have custody of Oliver. Meghan's mother also testified that Meghan is currently unfit to have custody because she is not at a point in her life where she can take care of herself.

A copy of Kirk's criminal history record was received into evidence. Kirk was convicted of marijuana possession in 2008, prior to Oliver's birth, and also in 2006. Since Oliver's birth in 2008, Kirk has spent approximately 540 days in jail--7½ of those months in jail resulted from his conviction for domestic assault upon Meghan. Oliver was not present during this assault. Kirk did not see Oliver during this incarceration, although he testified that he wrote to Meghan and she sent him pictures. Kirk has been arrested two times since Oliver's birth for possessing a controlled substance and found with drugs on his person on another occasion when he was arrested for felony resisting arrest. At the hearing, Kirk denied that he uses drugs and pointed out that he was not convicted of any drug charges since Oliver's birth. A review of his criminal history confirms that the charges were dismissed or amended in one or more plea agreements; however, the factual bases for the charges at least suggest Kirk's ongoing involvement with, if not actual use of, illegal drugs. Kirk has not participated in any treatment for drug use, anger management, or domestic violence and testified that he did not need any such treatment.

Kirk is 49 years old and lives with his mother in a one-bedroom apartment. Kirk's mother testified that Kirk was capable of providing for Oliver, but the record shows that at the time of the hearing, Kirk had no income from any source. Kirk claimed that he needed no income. Kirk does not appear to have had steady, gainful employment since Oliver's birth. He testified that until recently, he was healthy and looked for work every day by going "door to door" to see if anyone needed any work done. Kirk testified that he was injured while being taken to jail in December 2012 and has been unable to work since. He testified that if he obtained custody of Oliver, he would be eligible for public assistance, including housing. Kirk conceded that his mother's apartment was not adequate for Oliver, but he had not looked for another place to live during the time his custody request was pending. He did not plan to do so unless awarded custody. The status of Kirk's child support payments is not completely clear from the record, but apparently he has paid some of the ordered support, which may not have been distributed to Ryan and Leslie.

On March 8, 2013, the district court entered an order, denying Kirk's request for custody and awarding custody of Oliver to Ryan and Leslie. The court found no dispute about Meghan's incapacity to parent Oliver and found her unfit to have custody. The court noted Kirk's various incarcerations and found that they resulted in Kirk's personal incapacity to perform any reasonable parental obligations. The court found Kirk's drug use to be of particular concern and found that the record contradicted his assertions that he was not involved in drug use. The court was also troubled by Kirk's failure to obtain treatment for or acknowledge a problem with either drug use or domestic violence. The court found that Kirk had failed to make any reasonable effort to acquire steady employment and adequate housing that would enable him to provide a stable home for Oliver and that he had failed to remain out of jail, all matters within Kirk's control. The court found that the cumulative effect of Kirk's choices provided clear and convincing evidence that he was not fit to have custody of Oliver. The court found that an award of custody to Ryan and Leslie was in Oliver's best interests. The court awarded Kirk parenting time from 9 a.m. to 5 p.m. every other Saturday and Sunday. The court also awarded Kirk

holiday parenting time as set forth in its order. Because the court did not know enough about Meghan's current circumstances, it ordered that her parenting time was to be as agreed between her and Ryan and Leslie.

## ASSIGNMENTS OF ERROR

Kirk assigns, consolidated and reordered, that the district court erred in (1) denying his motion for custody and (2) failing to appoint him counsel. He also asserts that his due process rights were violated.

## STANDARD OF REVIEW

In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. *Jeffrey B. v. Amy L.*, 283 Neb. 940, 814 N.W.2d 737 (2012). In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Cesar C. v. Alicia L.*, 281 Neb. 979, 800 N.W.2d 249 (2011).

A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Fox v. Whitbeck*, 286 Neb. 134, 835 N.W.2d 638 (2013).

## ANALYSIS

*Custody.*

Kirk asserts that the district court erred in denying his motion for custody. While an unwed mother is initially entitled to automatic custody of the child, the issue must ultimately be resolved on the basis of the fitness of the parents and the best interests of the child. *Citta v. Facka*, 19 Neb. App. 736, 812 N.W.2d 917 (2012). Under the parental preference principle, a parent's natural right to the custody of his or her child trumps the interests of strangers to the parent-child relationship and the preferences of the child. *In re Interest of Lakota Z.*, 282 Neb. 584, 804 N.W.2d 174 (2011); *Farnsworth v. Farnsworth*, 276 Neb. 653, 756 N.W.2d 522 (2008). Courts may not properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship or has forfeited that right. *Id*. Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *Id.*

The district court found that both Meghan and Kirk were unfit to have custody of Oliver. Kirk does not dispute, and the record supports, the court's finding with respect to Meghan. She voluntarily placed Oliver with Ryan and Leslie in 2011, and at the time of hearing on Kirk's custody motion, she was struggling with addiction and mental illness, had no income or place to live, and was simply not in a position to care for Oliver.

Likewise, we find no abuse of discretion with respect to the court's finding that Kirk is presently unfit to care for Oliver. We recognize that Kirk has a superior right to custody of his son as compared to Ryan and Leslie. *In re Interest of Lakota Z., supra*. We also recognize that in

a custody dispute between a parent and a nonparent, clear and convincing evidence of unfitness must be shown in order to overcome the parent's superior right. See *In re Guardianship of D.J.*, 268 Neb. 239, 682 N.W.2d 238 (2004). See, also, *Farnsworth v. Farnsworth, supra* (clear and convincing evidence of substantial, continuous, and repeated neglect of child must be shown in order to overcome parent's superior right).

Kirk's frequent incarceration since Oliver's birth has left him regularly in a position where he is unable to care for Oliver. At the time of the custody hearing, he was apparently disabled, he had no income and no plan to seek employment, and he conceded that the residence he shared with his mother was inadequate in the event he were granted custody. Kirk had not explored housing options to provide for himself and Oliver. Kirk has past convictions for possession of marijuana and has been arrested for drug use charges since Oliver's birth. Although these arrests did not result in drug convictions, his criminal history record suggests that he continues to be involved with illegal drugs. He has also been convicted for domestic violence against Meghan and for felony resisting arrest.

At the time of the custody hearing, Kirk was simply not in a position to care for Oliver. We conclude that the evidence as set forth above clearly and convincingly shows that Kirk is currently unfit to have custody of Oliver. See *In re Interest of Jordan M.*, 20 Neb. App. 172, 820 N.W.2d 654 (2012) (evidence sufficient to find mother unfit where she did not have stable housing, was unemployed, and was deficient in making proper choices which negatively affected child's well-being; grandmother's petition for guardianship affirmed).

The district court also found that it was in Oliver's best interests to remain in Ryan and Leslie's custody. We agree. Nebraska's Parenting Act states that it is in the best interests of a child to have a "safe, stable, and nurturing environment." Neb. Rev. Stat. § 43-2921 (Reissue 2008). The best interests of a child require a parenting arrangement and parenting plan which provides for a child's safety, emotional growth, health, stability, and physical care. Neb. Rev. Stat. § 43-2923(1) (Cum. Supp. 2012).

The record shows that Ryan and Leslie, who are Oliver's uncle and aunt, have cared for him continuously since March 2011 and have provided Oliver with a safe, stable, and nurturing environment. They also assisted Meghan prior to that time when she was unable to care for Oliver. Ryan and Leslie have provided for Oliver's physical, emotional, and educational needs. The district court noted that Ryan and Leslie have been "the one constant" in Oliver's life, providing him with a stable, nurturing environment, a finding that is clearly supported by the record. The court did not abuse its discretion in finding that it was in Oliver's best interests to remain in Ryan and Leslie's custody.

*Other Assigned Errors.*

Kirk also asserts that his due process rights were violated and that the district court erred in failing to appoint him counsel. Kirk's arguments in support of all of his assigned errors largely amount to a recitation of the procedural history of this case and several other cases, both civil and criminal, in which he has been involved. Kirk's brief is difficult to follow, and he does not separate out these assigned errors in a meaningful fashion. Generally, in order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *In re Interest of Kodi L.*, 287 Neb. 35, ___ N.W.2d

___ (2013). Giving Kirk's brief a generous view, we will address the assigned errors. In doing so, we focus only on the instant case and not Kirk's criminal cases or the guardianship case.

The fundamental liberty interest of natural parents in the care, custody, and management of their child is afforded due process protection. *Michael E. v. State*, 286 Neb. 532, 839 N.W.2d 542 (2013). When a person has a right to be heard, procedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against a charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker. *In re Interest of Davonest D. et al.*, 19 Neb. App. 543, 809 N.W.2d 819 (2012). To the extent that Kirk's arguments about due process simply relate to his assertion that the court erred in failing to grant him custody of Oliver, we have addressed the court's custody determination above. Upon our de novo review, we find no due process violations. Kirk was provided with notice and a reasonable opportunity to participate in the custody proceedings. He presented evidence and cross-examined witnesses. This assignment of error is without merit.

Kirk argues that he should have been appointed counsel and cites "Neb. Ct. Rules & Procedures Rule 3-13" in support of his argument. Presumably, Kirk is referring to the Rules of Dist. Ct. of Third Jud. Dist. 3-13 (rev. 2013), which provides that the rule "shall apply in every criminal proceeding in which the laws of the United States or the laws of the State of Nebraska establish a right to be represented by counsel." Clearly, the rule is inapplicable in this civil proceeding.

The Nebraska Supreme Court has held that the appointment of counsel may be required in either criminal or civil cases where a party may be deprived of his or her physical liberty. *Poll v. Poll*, 256 Neb. 46, 588 N.W.2d 583 (1999), *disapproved on other grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002). For example, in *Allen v. Sheriff of Lancaster Cty.*, 245 Neb. 149, 511 N.W.2d 125 (1994), the Supreme Court concluded in a habeas corpus appeal that an indigent litigant had a right to appointed counsel in a contempt action for failure to pay a debt assigned to him in a dissolution decree, where he was jailed for contempt. In *Carroll v. Moore*, 228 Neb. 561, 423 N.W.2d 757 (1988), the Nebraska Supreme Court concluded that a putative father in a paternity action had a due process right to court-appointed counsel in a case where the county attorney's office assisted the mother in prosecuting her claim and concluded that due process requires that an indigent defendant have an absolute right to court-appointed counsel in state-initiated paternity proceedings.

The present proceedings are postpaternity in nature and arise not out of the state-initiated paternity action, but out of Kirk's motion seeking custody of Oliver. Thus, they are more akin to postdissolution proceedings that seek to modify a decree of dissolution in some way. In *Poll*, a postdissolution proceeding involving the mother's application to modify visitation, the Supreme Court concluded the father did not have a due process right to appointment of counsel and stated:

> The instant proceeding is one brought on by an individual involving a dispute between parents. The "weapons" of the state have not been marshalled against the father. The subject matter of the proceeding is the adjustment of visitation, not the initiation or termination of parental rights. Indeed, the issues of custody and visitation remain subject to modification following dissolution by statute, . . . and upon a proper showing,

visitation more favorable to the father could be ordered. The father has not, as a result of the modification of the postdissolution visitation, suffered the severe deprivation that triggers the appointment of counsel in civil and criminal cases. The father's legal interest in his child is unaffected. The father received reasonable notice and an opportunity to be heard commensurate with the rights affected by the proceedings. We conclude that the father did not have a due process right to appointment of counsel in these proceedings involving the mother's application to modify visitation.

256 Neb. at 54, 588 N.W.2d at 588. We conclude that Kirk did not have a due process right to appointment of counsel in these proceedings involving his application for custody of Oliver. Contrary to his assertions, his parental rights to Oliver have not been terminated. And as discussed above, he received reasonable notice and an opportunity to be heard commensurate with the rights affected by the custody proceeding. This assignment of error is without merit.

## CONCLUSION

The district court did not abuse its discretion in denying Kirk's motion for custody or in failing to appoint counsel. Kirk was not denied his due process rights.

AFFIRMED.