Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/21/2020 09:05 AM CST

- 945 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

State of Nebraska on behalf of Maci Jane Waters,
a minor child, appellee, v. Mark Lawrence
Bentley, appellant, Pamela D. Waters,
appellee, and Debra S. Waters,
intervenor-appellee.

___ N.W.2d ___

Filed January 14, 2020.    No. A-19-099.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.
2. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
3. ____: ____. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result.
4. **Child Custody: Parental Rights.** The parental preference doctrine provides that in the absence of a statutory provision otherwise, in a child custody controversy between a biological or adoptive parent and one who is neither a biological nor an adoptive parent of the child involved in the controversy, a fit biological or adoptive parent has a superior right to custody of the child.
5. ____: ____. The right of a parent to the custody of his or her minor child is not lightly to be set aside in favor of more distant relatives or unrelated parties, and the courts may not deprive a parent of such custody unless he or she is shown to be unfit or to have forfeited his or her superior right to such custody.
6. ____: ____. The parental superior right to child custody protects not only the parent's right to companionship, care, custody, and management of

- 946 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

his or her child, but also protects the child's reciprocal right to be raised and nurtured by a biological or adoptive parent.

7. **Constitutional Law: Parent and Child.** Establishment and continuance of the parent-child relationship is the most fundamental right a child possesses to be equated in importance with personal liberty and the most basic constitutional rights.

8. **Child Custody: Parental Rights.** The parental preference doctrine, by definition, is a preference, and it will be applied to a child custody determination unless it is shown that the lawful parent is unfit or has forfeited his or her superior right or the preference is negated by a demonstration that the best interests of the child lie elsewhere.

9. ____: ____. Unlike biological and adoptive parenthood, the status of in loco parentis is temporary, flexible, and capable of being both suspended and reinstated. In loco parentis status alone does not eclipse the superior nature of the parental preference doctrine in custody disputes.

10. **Parental Rights.** Parental rights may be forfeited by substantial, continuous, and repeated neglect of a child and a failure to discharge the duties of parental care and protection.

11. **Child Custody: Parental Rights.** Allowing a third party to take custody, even for a significant period of time, is not the equivalent to forfeiting parental preference.

12. ____: ____. The courts may not properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship or has forfeited that right.

13. **Child Custody: Parental Rights: Proof.** Clear and convincing evidence of substantial, continuous, and repeated neglect of a child must be shown in order to overcome the parent's superior right.

14. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Adams County: STEPHEN R. ILLINGWORTH, Judge. Reversed and remanded with directions.

Shane M. Cochran, of Snyder, Hilliard & Cochran, L.L.O., for appellant.

Adam R. Little, of Ballew Hazen, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

- 947 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

Bishop, Judge.

## INTRODUCTION

Mark Lawrence Bentley is the biological father of Maci Jane Waters, a minor child, and he appeals from an order of the Adams County District Court granting sole legal and physical custody of Maci to Maci's maternal grandmother, Debra S. Waters, subject to parenting time for Mark. Mark challenges the district court's determination that a parental preference was inapplicable to him and that the custody award was in Maci's best interests. We conclude the district court abused its discretion when it did not recognize Mark's superior right to custody of Maci under the parental preference doctrine. We reverse the order of the district court and remand the cause with directions.

## BACKGROUND

Pamela D. Waters and Mark engaged in sexual intercourse at least one time in the summer of 2010. Mark said he first met Pamela in June and saw her three times that month. They had one telephone conversation thereafter, which Mark indicated took place in October, relating to Pamela's discovery that she was pregnant. The content of the exchange between Pamela and Mark on that call is in dispute and is discussed further in our analysis. According to Mark, he was in the Army at that time and was deployed to Iraq, leaving Nebraska that November; he was gone for about 1 year. The record reflects that after the October telephone call, Pamela and Mark did not speak to each other again until after this action began.

Pamela gave birth to Maci in March 2011. According to Pamela and Debra, who is Pamela's adoptive mother, Maci lived with Pamela from birth until Maci was 3 years old. Debra said she babysat Maci often, starting from when Maci was 3 months old. Pamela decided to allow Maci to live with Debra full time sometime in 2014, due to issues with Pamela's health (i.e., seizures) and her living environment at that time. Pamela admittedly had a history of marijuana use

- 948 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

and diagnoses of "ADD [and] ADHD," "bonding attachment disorder," and "grand mal seizures"; Debra said Pamela also had "fetal alcohol effects" that "presented with some mild retardation." Debra and Pamela claimed that Debra received a power of attorney over Maci in 2014, but Pamela indicated that it expired in December 2016. Debra stated that Maci remained in her care after being placed with her in 2014, except for a few weeks in 2016 when Maci stayed with Pamela. In 2015, Debra twice took Maci to a licensed psychologist with an emphasis in pediatrics, Dr. Jody Lieske. Debra took Maci to Dr. Lieske because of an allegation against an unknown male related to a time when Maci was in Pamela's care. Also, Debra had concerns of how "clingy" Maci had been to her and the "trust issues" she thought Maci exhibited. Debra wanted to make sure Maci was adjusting well to her "situation." Sometime that year, Pamela gave birth to another child, who was 3 years old at the time of trial; Pamela said she had joint custody of that child with the child's father, but she ended her relationship with him 2 years before her trial testimony in this case. Pamela said Maci had known the father of Pamela's younger child "since [Maci] was born." Pamela tried to be involved in Maci's life as much as possible since Maci went to live with Debra. Pamela said her visits with Maci were supervised.

At the time of trial, Debra was 64 years old, was self-employed, was widowed, and lived in Hastings, Nebraska, with her mother and Maci, who was then 7 years old. She had been a foster parent to seven children, two of whom had "special needs" and she adopted (including Pamela). Debra also had two sons who had children of their own. Pamela, who was 33 years old at the time of trial, had lived in Harvard, Nebraska, for about 1½ years and had not lived at Debra's house for 12 years. Debra's other adopted child lived in Grand Island, Nebraska, with an "extended family host" and stayed with Debra every other weekend.

- 949 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

Mark, who was 31 years old at the time of trial, married Margarita Bentley in October 2014. They lived in Miller, Nebraska, on a family farm with Margarita's 8-year-old child from a prior dating relationship. Margarita had custody of her child subject to the parenting time of her child's father, which was every other weekend during the school year. Testimony from Margarita and her child's father indicated that Margarita and Mark have a positive relationship with her child's father and his wife, and vice versa. Margarita believed that Mark was "very good" with her child, having come into her child's life when she was 2 years old, and that Mark treated her child like she was his own child. In the past, Mark worked for his father on the farm, but as of June 2018, he worked for a power management corporation. Margarita worked at a salon in Kearney, Nebraska.

The record reflects that Pamela had to identify fathers for her children to fill out an application for what her trial counsel referred to only as "ADC." On December 29, 2016, the State filed a complaint against Pamela and Mark to establish support on Maci's behalf, alleging that Mark was Maci's biological father (genetic testing showed "probability of paternity of ninety-nine percent or more"). The State sought determination of Mark as Maci's father and an order that Pamela and Mark had a duty to pay support for Maci and that Pamela and/or Mark had to provide health insurance or pay cash medical support for Maci. Mark filed a voluntary appearance that same day. About a month later, Mark filed a motion in which he alleged that it was in Maci's best interests that he be awarded temporary custody of her, subject to Pamela's and Debra's "visitation" as appropriate. That same day, Mark filed an answer, admitting to being Maci's biological father. He asked for a determination of the same and asked for, among other things, child support. He also submitted a cross-complaint for full custody of Maci and the same or related relief also sought under his answer.

- 950 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

In February 2017, a child support referee filed a report with recommendations regarding the State's complaint. As relevant, the referee recommended an order that Mark is Maci's father and was to pay $595 monthly in child support and $98 monthly in cash medical support and that Pamela was to pay $50 monthly in child support, with the obligations to begin on March 1. On March 16, the district court adopted as its order the referee's report and recommendations.

After her two sessions in 2015, Maci regularly attended counseling with Dr. Lieske from 2016 through 2018. Records from her sessions from 2015 to 2018 were accepted into evidence during trial. Mark, Margarita, and her child first met Maci on March 23, 2017, at Dr. Lieske's office in Hastings. Debra was there too. Although there is a counseling record for it, Dr. Lieske said it was only a "meet and greet." At Debra's discretion, Mark had monthly visits with Maci in April, May, and June; Mark and Debra coordinated during each visit to plan Mark's next visit.

In May 2017, Mark filed a motion for default judgment against Pamela and for entry of relief sought in his motion for temporary custody, termination of his child support obligation, and entry of a parenting plan. On June 20, there was a hearing on the motion for default judgment; Pamela did not appear. Mark testified about the delay in establishing his paternity. He said he had submitted to paternity testing as soon as he received a letter from the State in October 2016. Maci was residing with Debra, and Pamela's time with Maci was "very limited." Mark believed Debra wanted to "keep" Maci. The district court was concerned because Debra did not receive notice of the hearing. The court questioned whether Maci was ready for "this" given her age and residence with Debra. The court was "not comfortable" with Mark's request for custody, because he "just started this in March" and because it "could be a very traumatic experience" for a 6-year-old child. The court withheld a custody ruling until after evidence was presented about whether it was in Maci's

- 951 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

best interests to "take her away from [Debra]." But the court agreed to enter a temporary parenting plan. On June 22, 2017, Mark was awarded parenting time with Maci on every other Saturday from 10 a.m. to 5 p.m., beginning July 1. Mark was ordered to work with Debra to increase his parenting time until further court order.

In September 2017, Debra filed a complaint for leave to intervene in the action. She alleged that she stood in loco parentis to Maci. She asked for an order granting her the continued care, custody, and control of Maci or, in the alternative, that it was in Maci's best interests to maintain a significant and beneficial relationship with her. In March 2018, with Mark's stipulation, Debra was appointed as the guardian of Maci in an action in the county court for Adams County; in a separate filing, the parties stipulated (1) that Debra would be allowed to be Maci's guardian as long as she retained custody of Maci in the action in the district court and (2) that if the district court changed custody from Debra to Mark, Debra's guardianship would terminate upon such order.

In May 2018, Mark filed a motion for 6 weeks of extended summer parenting time, spread out into 2-week intervals. He said that he had exercised the parenting time granted to him under the prior order. He said that in October 2017, the parties entered mediation and agreed to increase his parenting time to every other weekend from Friday at 6 p.m. to Sunday at 3 p.m.; he claimed he had exercised that parenting time since that October. Mark said he had also had extended parenting time for 1 week over "Christmas time" in 2017. In an order filed in June 2018, the district court noted that the parties had stipulated to parenting time to the date of trial and that therefore, Mark's motion was continued until trial. Mark later testified that preceding trial, he saw Maci for "a week to about nine days, off and on" over the summer of 2018.

Trial took place on July 11 and 12 and August 24, 2018. On July 12, the parties stipulated that Mark would have extended summer parenting time from July 13 through 18 and from

- 952 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

July 27 through August 5 with the regular weekend parenting time schedule to commence again on August 17; the court accepted the stipulation. During trial, each party offered exhibits that were received into evidence. Mark's evidence also consisted of his own testimony and testimony from Margarita, her child's father, two of Mark's relatives, and Margarita's coworker. Debra's evidence also consisted of her own testimony and testimony from Pamela; Dr. Lieske, who was qualified as an expert witness in the field of psychology; and the extended family host for Debra's other adopted child (not Pamela). Although Mark felt that his parenting time and relationship with Maci had greatly improved over the last year, Dr. Lieske opined that Maci did not have a bonded relationship with Mark but did have a bonded relationship with Debra. Dr. Lieske said that Mark had a "very nice interaction" with Maci but that Maci was a "timid child" and work needed to be done before there could be an established bonded relationship between Maci and Mark. Dr. Lieske did not have a set timeframe for when Maci "would be able to just be with" Mark. Dr. Lieske recommended the continued development of a relationship between Maci and Mark. After the parties each presented evidence, the district court ordered the parties to submit briefs and took the case under advisement.

The district court issued its order on January 8, 2019. The court indicated that Pamela was not considered suitable for custody "due to her mental and physical problems." The court perceived the threshold question before it was whether custody could go to Debra rather than to a "fit parent," Mark. Noting the parental preference doctrine, the court found that Debra stood in loco parentis to Maci. The court found that Mark, "although having knowledge of Pamela's pregnancy," "ignored" the possibility of a child until the State pursued him to establish paternity in late December 2016. The court concluded that there "should not" be a parental preference to Mark because of his "long absence" from Maci's life.

The district court proceeded to conduct a best interests analysis. It determined that Mark had not "forfeited" his parental rights by "total indifference," but, rather, he had "ignor[ed]" his parental responsibilities after being put on notice of the pregnancy in 2010. His relationship with Maci had been "relatively short term" so far. Mark was "a solid citizen and a fit parent." But the court said its "problem" with giving Mark custody "at this time" was that Maci had yet to bond with Mark. The court found that Debra had been and continued to be the constant in Maci's life and that Dr. Lieske's testimony was "compelling" regarding where Maci should be placed. The court noted Debra's age and some of her "health issues" (e.g., she walked with assistance of a cane) but found that they did not lessen her ability to parent Maci. The district court acknowledged Debra's testimony regarding why she believed it was in Maci's best interests to be in her custody, why her relationship with Maci was "more like a parent/child relationship," and the "reluctance" Maci has had about going on some of the visits with Mark. In conclusion, "under a 'best interests' analysis," legal and physical custody of Maci was awarded to Debra "as she has stood In Loco Parentis to [Maci], having raised her since age three . . . . Maci is bonded with Debra and so far not to Mark." The court believed it was in Maci's best interests that Mark receive parenting time to develop a bonded relationship with Maci. The court also noted that "circumstances could change over the years due to Debra's age and health issues."

Mark was given parenting time every other weekend from Friday at 4:30 p.m. to Sunday at 4:30 p.m. and on alternating holidays, extended parenting time during yearly fall and spring breaks, and parenting time for 8 weeks during the summer. He was also granted reasonable telephone contact with Maci during the week. Pamela was not given set parenting time, and her time was to be as agreed upon by the parties and only occur under adult supervision.

- 954 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

The district court further found that there was no evidence that "Debra's religion [was] detrimental to Maci." Debra was permitted to raise Maci in the religion Debra chose. Mark was not to "criticize or sabotage" Maci's upbringing, including her religion, and could not attempt to indoctrinate Maci into his religion. Mark was allowed to take Maci to church when she was in his care. Mark was ordered to continue paying child support as previously ordered. He was to provide medical insurance for Maci. Both parties were held responsible for their own attorney fees.

Mark appeals.

## ASSIGNMENTS OF ERROR

Mark claims, restated, that the district court erred by determining the parental preference doctrine did not apply and it was in Maci's best interests to remain in Debra's care.

## STANDARD OF REVIEW

[1] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

[2,3] An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.* A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

## ANALYSIS

### Parental Preference Doctrine

[4,5] The parental preference doctrine provides that in the absence of a statutory provision otherwise, in a child custody controversy between a biological or adoptive parent and one

- 955 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

who is neither a biological nor an adoptive parent of the child involved in the controversy, a fit biological or adoptive parent has a superior right to custody of the child. *Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016). The right of a parent to the custody of his or her minor child is not lightly to be set aside in favor of more distant relatives or unrelated parties, and the courts may not deprive a parent of such custody unless he or she is shown to be unfit or to have forfeited his or her superior right to such custody. *Id.* The Nebraska Supreme Court has acknowledged the importance of the best interests of the child in resolving a child custody dispute, but a parent's superior right to custody must be given its due regard, and absent its negation, a parent retains the right to custody over his or her child. *Id.* Although there may be instances where courts have determined that the best interests of the child defeated the lawful parent's preference, those cases are viewed as being "exceptional." *Id.* at 290, 887 N.W.2d at 718 (providing example from *Gorman v. Gorman*, 400 So. 2d 75 (Fla. App. 1981), where trial court found biological father and ex-stepmother to be fit, but awarded custody of child to ex-stepmother because child felt he never had father because father was often away from home, frequently intoxicated, and physically abused and blamed child for death of natural mother during childbirth).

[6-8] The parental superior right to child custody protects not only the parent's right to companionship, care, custody, and management of his or her child, but also protects the child's reciprocal right to be raised and nurtured by a biological or adoptive parent. *Uhing v. Uhing*, 241 Neb. 368, 488 N.W.2d 366 (1992). Establishment and continuance of the parent-child relationship is the most fundamental right a child possesses to be equated in importance with personal liberty and the most basic constitutional rights. *Id.* The parental preference doctrine, by definition, is a preference, and it will be applied to a child custody determination unless it is shown that the lawful parent is unfit or has forfeited his or her

- 956 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

superior right or the preference is negated by a demonstration that the best interests of the child lie elsewhere. *Windham v. Griffin, supra*.

The Supreme Court recently provided further insight on the interaction of the best interests of the child standard and the parental preference principle. See *In re Guardianship of K.R.*, 304 Neb. 1, 932 N.W.2d 737 (2019). The Supreme Court cautioned that *Windham v. Griffin, supra*, "cannot be read to stand for the proposition that the parental preference principle will be rebutted in every case in which the nonparent might prevail in a pure best interests comparison." *In re Guardianship of K.R.*, 304 Neb. at 19, 932 N.W.2d at 749.

[9] Also, unlike biological and adoptive parenthood, the status of in loco parentis is temporary, flexible, and capable of being both suspended and reinstated; in loco parentis status alone does not eclipse the superior nature of the parental preference doctrine in custody disputes. See *Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016). See, also, *Farnsworth v. Farnsworth*, 276 Neb. 653, 756 N.W.2d 522 (2008) (district court abused its discretion by focusing solely on best interests of children when granting custody to grandparents; district court should have also considered superior interests of biological father, and facts that indicated children might have more stability if they remained with grandparents did not overcome father's superior rights).

[10-13] Parental rights may be forfeited by substantial, continuous, and repeated neglect of a child and a failure to discharge the duties of parental care and protection. *Windham v. Griffin, supra*. However, allowing a third party to take custody, even for a significant period of time, is not the equivalent to forfeiting parental preference. *Id.* The courts may not properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship or has forfeited that right. *Farnsworth v. Farnsworth, supra*. Clear and convincing evidence of substantial, continuous, and repeated

- 957 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

neglect of a child must be shown in order to overcome the parent's superior right. *Id*.

### Did Mark Forfeit His Superior Right to Maci's Custody?

Mark argues that the parental preference doctrine should have applied to him because he is fit to parent and he did not forfeit his superior right to custody of Maci. He contends his "rights to custody of [Maci] should trump any claims for custody" over Debra. Brief for appellant at 22. The district court determined that Debra "has stood In Loco Parentis to Maci having raised her since she was three years old." Mark does not assign error to that particular finding, and he acknowledges that "Maci has been with Debra for the last 3 to 4 years and has a bond with Debra." Brief for appellant at 32. However, it is Mark's position that the evidence did not support that he was unfit, nor that he had forfeited his parental rights; accordingly, he claims that he "deserves to have custody of [Maci] pursuant to the parental preference doctrine." *Id*. at 30.

Mark cites to two cases in which this court concluded there was no forfeiture of parental rights, namely, *In re Interest of Eric O. & Shane O.*, 9 Neb. App. 676, 617 N.W.2d 824 (2000), *disapproved on other grounds, In re Interest of Lakota Z. & Jacob H.*, 282 Neb. 584, 804 N.W.2d 174 (2011), and *Mair v. James*, No. A-00-016, 2001 WL 537062 (Neb. App. May 22, 2001) (not designated for permanent publication). Mark contends that if those cases "do not rise to the level of forfeiture, then [this case] should not either." Brief for appellant at 27. See, *In re Interest of Eric O. & Shane O., supra* (no forfeiture although minor children resided with third party for nearly 6 years, several of which were with natural father's consent as evidenced by stipulation to third party's guardianship over children); *Mair v. James, supra* (no forfeiture although minor child lived with third party for about 7 years, father visited child only once after his paternity was

- 958 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

established and in 2 years prior to seeking custody, and father became more than $4,000 delinquent in child support; this court did not find as meaningful father's lack of acknowledgment of paternity prior to entry of paternity decree because even mother was unsure who had fathered child).

Mark also points us to several cases of recognized forfeiture. See, *Nye v. Nye*, 213 Neb. 364, 329 N.W.2d 346 (1983) (natural father's second application for custody denied where, among other things, he removed children without authorization from Nebraska on one occasion and one licensed psychiatrist was of opinion that one child could benefit from termination of visits with father); *Gray v. Hartman*, 181 Neb. 590, 150 N.W.2d 120 (1967) (father separated from mother and moved out of mother's home at least 9 months before divorce petition filed and at least 6 months before child's birth; father claimed to have attempted to exercise parenting time granted to him under divorce decree for first 5 years of child's life but then went about 10 years without seeing child, sending cards or gifts, or asking about child's well-being); *Williams v. Williams*, 161 Neb. 686, 74 N.W.2d 543 (1956) (father not unfit but forfeited his preferential right to the child's custody given his indifference for 8 years and his willingness to allow others to assume parental obligations in his stead); *State on behalf of Combs v. O'Neal*, 11 Neb. App. 890, 662 N.W.2d 231 (2003) (grandmother lived with child for 13 years and raised child for 11½ of those years; natural father said he maintained relationship with child since child's birth, was found to have failed to pay child support for first 9 years of child's life although he knew he fathered the child, and was content with having grandmother raise child until paternity action initiated).

We agree with Mark that the present case is not analogous to those cited cases in which forfeiture overcame a parental preference, nor are the circumstances present here similar to those cases in which there were findings of no forfeiture despite arguably worse facts. However, Debra contends that

- 959 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

the "district court correctly concluded that Mark forfeited his superior right under the parental preference doctrine because he was absent from [Maci's] life for the first six years of her life." Brief for appellee at 8.

It is true that the district court was troubled by the fact that Mark had knowledge that Pamela was pregnant, but "ignored the situation and possibility of a child" until the State filed an action for paternity. Relying on *Jeffrey B. v. Amy L.*, 283 Neb. 940, 814 N.W.2d 737 (2012), and *Williams v. Williams, supra*, the district court concluded that "custody of Maci can be placed with Debra" and that "there should not be a parental preference to [Mark] for custody over [Debra] because of his long absence from Maci's life." The district court explained that Mark had not forfeited his parental rights by total indifference, but that he did ignore his parental responsibilities after being put on notice of the pregnancy in 2010. And although the district court determined that Mark's absence for 6 years "from the life of [Maci] should result in him not receiving custody," the court also determined that Mark had not "totally forfeited his parental rights to where he should not have contact with Maci." Since being contacted by the State, the court acknowledged that Mark "has taken responsibility" and that Mark is "a solid citizen and a fit parent." The court expressed concern, however, that "Maci has yet to bond with Mark" and that the "constant" in Maci's life "has and continues to be [Debra]."

Keeping the parental preference legal principles set forth above in mind, we first note that Mark's fitness as a parent is not at issue. "Debra does not dispute Mark's parental fitness." Brief for appellee at 9. Rather, the focus here is the district court's conclusion that although Mark had not forfeited his parental rights in entirety and maintained a right to have parenting time with Maci, he had forfeited his superior right to have custody of her. The district court relied upon *Jeffrey B. v. Amy L., supra*, and *Williams v. Williams*, 161 Neb. 686, 74 N.W.2d 543 (1956), in reaching its decision to place custody of

- 960 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

Maci with Debra. We therefore consider the circumstances of those cases as applied here.

*Jeffrey B. v. Amy L., supra*, involved a biological father's attempt in 2010 to intervene and vacate a paternity decree entered in 2001 which had legally determined someone else to be the father of the child at issue. The biological father had engaged in a brief sexual relationship with the biological mother between March and June 1999 while he was temporarily working in Omaha, Nebraska; the biological father subsequently returned to St. Louis, Missouri. After the mother learned she was pregnant, she went to St. Louis to meet with the biological father, but he was out of town. The mother did meet with two of his coworkers, and one of them told the biological father that the mother might be pregnant and that she might be seeing someone else. The biological father never considered the possibility that the child could be his. After the child was born, the mother and child lived with a man who the mother and the man believed at the time was the child's biological father. When that relationship ended, a petition to establish paternity was filed by the putative father; a paternity decree legally finding him to be the father was entered in 2001. Although the mother was initially awarded custody of the child, the legally determined father was subsequently awarded custody of the child in 2006. The mother filed a modification action in 2009, and at that point, she contacted the biological father, who agreed to a paternity test. Genetic testing confirmed the likelihood that he was the father, and in May 2010, he moved to intervene in the mother's pending proceeding to modify the paternity decree. The district court permitted the intervention and set aside the paternity decree; the Supreme Court reversed that decision. See *id*.

While we acknowledge that these facts bear some similarity to the present case in terms of a brief sexual relationship followed by the father's receipt of some notification about the mother's pregnancy, there is, however, a key distinguishing legal factor. *Jeffrey B. v. Amy L.*, 283 Neb. 940, 814 N.W.2d

- 961 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

737 (2012), was not a case decided on the parental prefer-ence doctrine or best interests. Rather, it involved a paternity decree which had been entered almost a decade earlier and had legally determined another person to be the child's father; the legal issue was whether intervention by the biological father and vacation of a prior paternity decree was appropriate under the circumstances presented in that case. The Supreme Court determined that the biological father could not intervene as a matter of right under Neb. Rev. Stat. § 25-328 (Reissue 2008), because intervention as a matter of right is allowed only before trial begins, not after judgment has been obtained, and in that case, the paternity judgment had been entered almost a decade earlier. See *Jeffrey B. v. Amy L., supra*. Further, the Supreme Court found that there was no statutory basis under Neb. Rev. Stat. § 25-2001(4) (Reissue 2008) to allow the biological father to intervene and seek to have the paternity decree vacated because the biological father did not exercise reasonable diligence to discover the mother was pregnant with his child, and he could not show that the paternity decree was obtained by mistake, neglect, or irregularity, nor could he show that there was unavoidable casualty or misfortune which prevented him from intervening before the paternity decree was entered. See *Jeffrey B. v. Amy L., supra*. The Supreme Court also concluded that there was no equitable basis to allow the biological father to intervene in a child custody modification dispute involving the biological mother and the legally determined father who had previously been awarded custody of the child and with whom the child had been living for approximately 7 years. In the matter before this court, no paternity action and decree determining someone else to be Maci's father preceded the present action. No other person was identified as the child's father, much less legally deter-mined to be the child's father as had occurred in *Jeffrey B. v. Amy L., supra*. In fact, in this case, Pamela testified that she was asked who Maci's father was when she had Maci at the hospital and that she had responded: "I didn't know at the

- 962 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

moment." Maci's birth certificate shows that Pamela did not list anyone as Maci's father, and the only evidence regarding Mark's knowledge of Pamela's pregnancy is the October 2010 telephone call, shortly after which Mark was deployed to Iraq for about a year.

In *Williams v. Williams*, 161 Neb. 686, 74 N.W.2d 543 (1956), the biological father sought custody of his 8-year-old child via a habeas corpus proceeding. The child's mother had died shortly after the child's birth and the child was placed with his paternal grandparents. The fitness of the father was not at issue. Also, the father had visited the child from time to time and made some contributions to support the child. The question considered by the Supreme Court was whether the father forfeited his preferential right to the child's custody given his indifference for 8 years and his willingness to allow others to assume parental obligations in his stead. The Supreme Court concluded the father had forfeited his natural right as a parent "to uproot and destroy the close relationship between the child and the grandparents which he permitted to come into existence with his full approval and consent." *Id*. at 690, 74 N.W.2d at 545. The court observed, "While it is true that a parent has a natural right to the custody of his child, the court is not bound as a matter of law to restore a child to a parent under any and all circumstances." *Id*. Where a "father abandoned the care of his child to his parents for 8 years beginning from the day of its birth, with his full approval and consent, he has forfeited his natural right to the child's custody." *Id*. at 690-91, 74 N.W.2d at 545. Again, the facts in the present matter are quite different. Unlike the father in *Williams v. Williams, supra*, Mark did not turn over the responsibility for Maci's childrearing to Debra; Mark assumed immediate responsibility when he became aware Maci was his child.

The district court relied on the cases just discussed, and it concluded that "there should not be a parental preference to [Mark] for custody over [Debra] because of his long absence

- 963 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

from Maci's life" and that it "must therefore proceed to a best interests analysis to determine custody." To conclude as it did, the district court necessarily was persuaded that the October 2010 telephone conversation between Pamela and Mark was sufficient to put Mark on notice that Pamela could have been pregnant with his child and that Mark had an obligation to follow up with Pamela to determine whether she had a baby and, if so, whether it was Mark's child. In our de novo review of the record, we cannot agree that the record affirmatively establishes that Mark forfeited his superior right to custody based upon his failure to follow up on the October 2010 telephone call. The evidence reveals the following:

Pamela and Mark had a brief sexual relationship in June 2010, with no contact until October of that year. According to Mark, his telephone call with Pamela in October lasted "a few minutes." He first said that the subject of the telephone call was the possibility that Pamela was pregnant. On cross-examination, Mark agreed that Pamela told him she was pregnant. On further questioning by the court, Mark answered that he could not remember Pamela's exact wording, but he agreed that she left him with the impression that she was pregnant. Although at first Mark could not recall what he said to Pamela, he later agreed that he asked her if she thought the child was his. Mark's counsel asked him if he got a definitive answer from that; Mark answered that Pamela was "very upset" and was crying while he was "unable to understand her" and then she hung up. Mark did not know whether the child was his. When asked if he knew if Pamela was seeing other people, Mark responded that his friends in Hastings said "they did see her with other people just in the social environment at the bar and such."

Pamela testified that she had taken three pregnancy tests which were all positive and that she knew she was pregnant before she called Mark. She knew Mark as "Bentley" at that time and indicated she was not sure of his first name back then. She said that during the telephone call, she told Mark she

- 964 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

was pregnant; she "pretty much let him know that[,] because he was the last one [she] was with." Pamela recalled that Mark was confused and that at one point he told her he "didn't want it." She said Mark had told her he was being deployed so that she would not be able to contact him. Pamela said she saw Mark after that at a bar on a "very, very crowded night" and made eye contact with him for a "brief second" and then tried but could not find him. Mark denied or did not recall running into Pamela at a bar after seeing her in June 2010. Maci was born in March 2011. Pamela testified that she was asked who Maci's father was when she had Maci at the hospital and that she had responded: "I didn't know at the moment." Maci's birth certificate shows that Pamela did not list anyone as Maci's father. Pamela admitted that she did not identify a father on Maci's birth certificate because she did not know Mark's first name or thought it was "Ryan" and because she wanted to be sure that the name was correct and about the identity of the father.

As stated previously, Mark was deployed to Iraq and left Nebraska about a month after his telephone call with Pamela in October 2010. Pamela said she tried contacting Mark one time after Maci's birth but never got a response. She did not know if he still had the same telephone number. Following the telephone call in October 2010, Pamela and Mark did not speak to each other again until after this action began. During trial, Pamela agreed that when she applied at some point for what her counsel referred to as "ADC," she identified Mark as the father of one of her children, knowing that his name was "Bentley" and that he was in the military. Mark claimed he first learned he had a child after the State contacted him to submit to a paternity test in October 2016.

Although the record supports the district court's finding that in October 2010 Mark was made aware that Pamela was pregnant, the record does not show that Mark, or even Pamela, at that time conclusively knew that Mark was the father of the child. Even if Mark was "the last one [she] was with,"

- 965 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

as Pamela testified was her reason for telling Mark she was pregnant, that would not have necessarily ruled out other potential fathers. One of the reasons why Pamela did not list a father on Maci's birth certificate was because she wanted to verify Maci's father's identity in general, which indicates her own lack of certainty as to who might be Maci's father. While it would have been prudent for Mark to follow up with Pamela after the one telephone call they had about Pamela's pregnancy, the evidence does not affirmatively show that Mark forfeited his right to custody. See *Farnsworth v. Farnsworth*, 276 Neb. 653, 756 N.W.2d 522 (2008) (courts may not properly deprive parent of custody of minor child unless it is affirmatively shown that such parent is unfit to perform duties imposed by relationship or has forfeited that right). Even when considering only Pamela's testimony, she did not know who the child's father was with any degree of certainty even at the time Maci was born, and she made only one unsuccessful attempt after Maci's birth in March 2011 to try to contact Mark, who had been deployed to Iraq for a year commencing the prior November. Further, the record does not clearly and convincingly demonstrate that Mark's absence from the beginning of Maci's life constituted forfeiture of his parental rights based upon substantial, continuous, and repeated neglect of the child. See *id*. See, also, *In re Interest of Lakota Z. & Jacob H.*, 282 Neb. 584, 590, 804 N.W.2d 174, 180 (2011) (parental preference principle applied in guardianship termination action; individual in opposition to termination of guardianship bears burden of proving by "clear and convincing" evidence that biological or adoptive parent either is unfit or has forfeited his or her right to custody).

The record shows that once Mark was notified about the possibility that Maci was his child and that a paternity test confirmed the same, he discharged his duties of parental care and protection over Maci as he was increasingly permitted. Mark said he was contacted by the State in October 2016, then submitted to a "DNA test . . . right away." The State filed its

- 966 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

complaint in December. In filings submitted in January 2017, Mark admitted he was Maci's biological father and sought custody of Maci. The court ordered that Mark was Maci's biological father on March 16. Mark first met Maci on March 23. With Debra's permission, he had monthly visits with Maci in April, May, and June, all prior to the June hearing on his motion for default judgment after which the district court set a temporary parenting schedule for Mark. As Mark states in his brief, his parenting time has been "steadily increasing" since that time. Brief for appellant at 25. He further states he never missed a weekend of his parenting time, a claim that the record does not refute (disregarding one time in the summer of 2018, when Debra said Mark did not pick up Maci on a Friday as Mark's work schedule was "mixed up" so he picked up Maci the next morning after he got off work—a night shift). Moreover, the child support payment history reports revealed that as of the trial, Mark was current on his child support and cash medical support obligations for Maci. Mark also showed that he had obtained health insurance since the action began and had added Maci to be covered by his health insurance in June 2018.

In sum, Mark is undisputedly a fit parent, and the record does not affirmatively reflect that he forfeited his superior right to custody of Maci, nor is there clear and convincing evidence of substantial, continuous, and repeated neglect of Maci necessary to overcome his parental superior right. The district court abused its discretion when it found otherwise based upon its assessment of Maci's current best interests. See *Farnsworth v. Farnsworth*, 276 Neb. 653, 756 N.W.2d 522 (2008) (district court abused its discretion by focusing solely on best interests of children when granting custody to grandparents; district court should have also considered superior interests of biological father, and facts that indicated children might have more stability if they remained with grandparents did not overcome father's superior rights). While the district court's best interests assessment is understandable

- 967 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

given Maci's existing relationship with Debra, the record does not support that Mark forfeited his superior right to custody, nor is this an instance where the child's best interests defeat Mark's parental preference. There are no exceptional circumstances here which override or rebut Mark's parental preference. See *Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016) (instances where best interests defeat lawful parent's preference are viewed as exceptional, such as father's frequent intoxication, physical abuse, and blaming child for death of natural mother during childbirth). The record demonstrates that once Mark became aware of Maci's existence, he immediately engaged in parenting; the district court found him to be "a solid citizen and a fit parent." Even if the circumstances present in this case support the fact that Debra should have custody under a pure best interests comparison, the parental preference principle has not been rebutted, as discussed above. See *In re Guardianship of K.R.*, 304 Neb. 1, 932 N.W.2d 737 (2019) (parental preference principle will not be rebutted in every case in which nonparent might prevail in pure best interests comparison).

Accordingly, we reverse the district court's January 8, 2019, order and remand the cause with the following directions: Legal and physical custody should be awarded to Mark. Having legal custody means that Mark will have the "authority and responsibility for making fundamental decisions regarding the child's welfare, including choices regarding education and health." Neb. Rev. Stat. § 43-2922(13) (Reissue 2016). See, also, *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 946, 932 N.W.2d 692, 703 (2019) (legal custody gave father "final say on fundamental decisions regarding [child's] welfare, such as where he attends school, his religious upbringing, and how his health and medical needs are met"). Regarding physical custody, Mark will have the "authority and responsibility regarding [Maci's] place of residence and the exertion of continuous parenting time for significant periods of time." § 43-2922(20). Regarding physical custody, we are mindful of

- 968 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
STATE ON BEHALF OF WATERS v. BENTLEY
Cite as 27 Neb. App. 945

the district court's concerns that "Maci is bonded with Debra and so far not to Mark" and that Maci and Mark "need to work on the relationship so Maci knows Mark is there for her." We also acknowledge the significance of the bond between Maci and Debra, and due consideration must be given to maintaining that relationship. Therefore, on remand, the district court is to develop a parenting plan and visitation schedule that will gradually transition Maci's daily physical custody and care from primarily being with Debra to primarily being with Mark, but preserving appropriate grandparent visitation between Maci and Debra. The district court may, in its discretion, determine whether to hold further evidentiary hearings to obtain input from the parties or other evidence as to a reasonable transitional schedule for Maci.

[14] In light of our decision above, we need not further address Mark's other assigned error concerning the district court's best interests analysis. See *Weatherly v. Cochran*, 301 Neb. 426, 918 N.W.2d 868 (2018) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

## CONCLUSION

For the reasons set forth above, we reverse the January 8, 2019, order of the district court and remand the cause with directions.

Reversed and remanded with directions.